GINSBERG AND GINSBERG, LLC, TRUSTEE OF
THE WIYOT TRUST *v.* ALEXANDRIA
ESTATES, LLC, ET AL.
(AC 32479)

Beach, Espinosa and Flynn, Js.

Argued November 30, 2011—officially released July 3, 2012

*Jennifer M. McGrath,* with whom, on the brief, was *Matthew J. Donovan,* for the appellant (plaintiff).

*Joseph A. DiSilvestro,* with whom, was *Frank J. Kolb, Jr.,* for the appellee (defendant John Neubig).

*Opinion*

FLYNN, J. This case involves a determination of priorities of encumbrances in an action to foreclose an $880,000 mortgage brought by the plaintiff, Ginsberg & Ginsberg, LLC, trustee of the Wiyot Trust, against the defendants, Alexandria Estates, LLC (Alexandria Estates), a mortgagor, and Elizabeth Mazzucco, Ben Mazzucco, Jitendra Patel, Sean Drinan, John Neubig, Empire Paving, Inc., and Statewide Construction, Inc., which was heard by the court on a short calendar motion.[1] The principal issue arises between the plaintiff and Neubig over his claimed entitlement to payment of the sum of $35,000 for each lot that might be developed on the mortgaged premises, which, by virtue of an agreement made between Neubig and Dale Construction 01, LLC (Dale Construction), was recorded on the land records.[2] The trial court rendered judgment for Neubig, holding that Neubig had an interest in the land mortgaged to the plaintiff that was prior to the plaintiff's lien. We reverse that judgment of the court, and further reverse the judgment of strict foreclosure, and remand the case to the trial court for the purpose of determining

[1] The plaintiff withdrew the action against the defendants Elizabeth Mazzucco on December 3, 2008, and Empire Paving, Inc., on June 28, 2010.

[2] We note the following procedural history in the case. Before being made a party, the defendant Neubig, by motion dated June 18, 2008, moved to determine priorities. The plaintiff objected to that motion because Néubig was not then a party. When Neubig sought to become a party by motion dated May 5, 2008, the court, *Crawford, J.*, denied his motion on June 9, 2008. Subsequently, the plaintiff filed a motion to join Neubig and others, which was granted by the court. Service was made on Neubig on June 26, 2008, joining him and other defendants in the foreclosure action. The defendant Neubig then moved again to determine priorities by motion dated September 8, 2008. That was granted by the court, *Abrams, J.*, on February 13, 2009, and by memorandum of decision dated and filed July 31, 2009. A final judgment of strict foreclosure was rendered on June 28, 2010. The plaintiff appealed from both the July 31, 2009 order, finding Neubig's interest in the foreclosed property prior in right to the plaintiff's interest, and from the judgment of strict foreclosure rendered on June 28, 2010.

lien priorities and rendering judgment consistent with this opinion.

In its brief to the trial court, the plaintiff claims that Dale Construction "never had any ownership interest in the property," and the filing of the agreement did not "bind heirs, successors and assigns of the property . . . whether or not they were recorded prior in time to the mortgage." In its fourth argument before the court against Neubig's claim of priority, the plaintiff argued that Neubig's claim arose by virtue of an agreement between Neubig and Dale Construction, which "never had an interest in the real estate." Neubig further argued through counsel: "I mean, you talk about something that's outside of the chain of title, it was never in." Because it was outside the chain of title, the plaintiff argued that "no title searcher's ever going to find that, and so what, even if they found it, it doesn't mean anything, [be]cause [Dale Construction] never owned anything."[3]

---

[3] On appeal, the plaintiff also argued in its brief, "[l]ikewise, here, all agreements were outside the chain of title; most notably, the August 2002 agreement executed by Neubig and Dale Construction, which never had any ownership interest in the property, and the May 2005 agreement which merely attempted to remedy the fact that Dale Construction had no authority to enter a contract that could run with the land. Moreover, the deed conveying the property from Neubig to Alexandria Estates made no reference to the agreements and there was no reservation in the warranty deed conveying the property to Alexandria Estates that would alert subsequent title holders of the agreement made between Neubig and Alexandria Estates." The dissent takes no account of this claim in the appellate brief nor the argument of the plaintiff's trial counsel that the Dale Construction-Neubig agreement was outside the chain of title. It contends that the dispositive issue is whether the Neubig-Alexandria Estates agreement was a real or personal covenant. We disagree that the trial court or this court, exercising plenary review, could make the determination of priorities in title without the deed of conveyance from Neubig to Alexandria Estates. What the dissent does not contemplate is that if the conveyance from Neubig to Alexandria Estates were expressly made subject to the Dale Construction-Neubig agreement, it could burden the land and be prior to the plaintiff's later recorded mortgage. The Neubig-Alexandria Estates deed was not placed before the trial court in any manner.

On appeal, the plaintiff claims that the Dale Construction-Neubig filing was outside its chain of title and was a personal agreement that did not run with the land. Resolution of the issues depends on whether the interest Neubig claims was in the plaintiff's chain of title, and whether Neubig has an interest in the mortgaged premises that was a real, as opposed to a personal, covenant that did not run with the land, and whether such interest had priority over the plaintiff's mortgage. The trial court heard oral argument from the attorneys in which they made representations and took briefs, to which they appended documents and deposition extracts, but no evidence was taken from witnesses under oath, no documentary exhibits were marked as exhibits, no stipulation of facts was entered, and there were no admissions in the pleadings on which the court could rely.

Our standard of review is plenary when we are required to determine the intent behind language in a deed or other written instrument by which litigants claim an interest in real estate. Under that plenary standard, we are not required to give customary deference to the trial court's factual inferences. See *Contegni* v. *Payne*, 18 Conn. App. 47, 51, 557 A.2d 122, cert. denied, 211 Conn. 806, 559 A.2d 1140 (1989).

The plaintiff's principal claims on appeal can be distilled down to two. First, the plaintiff claims that Neubig's claimed interest in the land cannot be prior to the plaintiff's mortgage because Neubig's interest represents only a personal contract or covenant rather than a "real covenant," which could run with the land. Leaving that argument aside for the moment, there is a second issue on appeal, namely, that the document by which Neubig claimed an interest in the land was not in the plaintiff's chain of title. Specifically, the plaintiff briefs its claim that the August, 2002 agreement, by which

Neubig claims an interest, establishes that Dale Construction "never had any ownership interest in the property . . . . [T]he deed conveying the property from Neubig to Alexandria Estates made no reference to the agreements and there was no reservation in the warranty deed conveying the property to Alexandria Estates that would alert subsequent title holders of the Agreement made between Neubig and Alexandria Estates."

The principal issues to be decided, namely, whether Neubig's agreement with Dale Construction is in the plaintiff's chain of title and is a real covenant running with the land, depend necessarily upon a review of the pertinent deeds relating to the parties' claims. The concept of the chain of title is well explained and expressed in the Connecticut Standards of Title: "The 'chain of title' concept is a principle of case law, developed to protect subsequent parties from being charged with constructive notice of the existence and contents of those recorded instruments which a title searcher would not be expected to discover by the customary search of land records. . . ." Connecticut Bar Association, Connecticut Standards of Title (1999), standard 2.2.

Key to making any decision in this case is a review of the deed of conveyance from Neubig to Alexandria Estates. If this deed made the conveyance subject to the Neubig-Dale Construction agreement, it bears on the issue as to whether the Neubig agreement is prior to the plaintiff's mortgage.[4] This deed is not in the record before us. We are unable to review this matter without

---

[4] The parties entered no stipulation of facts and marked no exhibits in evidence. They did attach uncertified copies of deeds and deposition extracts to their briefs, which they did not seem to disagree about, but attached no copy of the Neubig deed to Alexandria Estates. We take no position in this appeal about whether that is the proper way to present evidence bearing on who is a prior or subsequent encumbrancer on the title in question.

it, and the court could not properly determine priorities without this document.

The judgments are reversed and the case is remanded for further proceedings to determine the order of priorities in accordance with this opinion.

In this opinion BEACH, J., concurred.

ESPINOSA, J., concurring in part and dissenting in part. In this foreclosure action, the defendant John Neubig filed a motion to determine priorities of encumbrances running with the subject property owned by the defendant Alexandria Estates, LLC (Alexandria Estates). Specifically, Neubig claimed that his interest in the subject property was prior in right to that of the plaintiff mortgagee, Ginsberg & Ginsberg, LLC, trustee of the Wiyot Trust. On appeal, the plaintiff challenges the judgment of strict foreclosure on the ground that the court improperly determined that Neubig's interest was superior to its interest in the property. I agree with my colleagues in the majority that the judgments of the trial court should be reversed. Respectfully, I disagree with the majority that the case should be remanded to that court for further proceedings related to Neubig's interest in the property. I would direct the court, on remand, to grant the plaintiff priority over any interest of Neubig.

The relevant background facts and procedural history are not in dispute. Neubig was the former owner of the subject property, located in North Haven, having sold it to Dale Construction 01, LLC (Dale Construction), on November 7, 2002, by virtue of a purchase and sale agreement. By mutual agreement, at the time of the closing, Neubig transferred title of the property to Alexandria Estates, which was closely associated with Dale

Construction as a business entity.[1] It appears that Alexandria Estates intended to subdivide the property into building lots for the construction of single family homes. In 2007, Alexandria Estates executed a promissory note, promising to pay the plaintiff $860,000 with interest. The note was secured by a mortgage lien on the subject property. In 2008, the plaintiff initiated the present foreclosure action, claiming that Alexandria Estates failed to make a required interest payment on the note. Thereafter, Neubig was made a defendant in the action and filed a motion to determine whether his encumbrance on the subject property was superior to the plaintiff's mortgage lien on the property.

Before the trial court, Neubig attempted to demonstrate the nature of his interest in the subject property by relying on several written agreements filed on the North Haven land records. First, he relied on an agreement between him and Dale Construction, which agreement was recorded on the land records on March 4, 2004. In relevant part, that agreement required Dale Construction to pay Neubig $35,000 for each lot, after the first lot, later approved for residential development on the subject property. Second, Neubig relied on an agreement between him and Alexandria Estates, which was recorded on the land records on November 7, 2002. That agreement required Alexandria Estates to pay Neubig $35,000 for each lot, after the first lot, later approved for residential development on the subject property. Third, Neubig relied on a notice of equitable interest, recorded on the land records on May 3, 2005. That notice referred to the $35,000 payments due Neubig

___

[1] Although it is not dispositive of the issue before this court, it is worth noting by way of background Neubig's unchallenged assertion that Alexandria Estates was an assign of Dale Construction, such that Dale Construction's agreement bound Alexandria Estates. He asserted that "[e]ach was the alter ego of the other as the companies were closely held within the same family and Alexandria Estates . . . was formed for the sole purpose of holding the property in question."

for approved lots and described with particularity the agreement between him and Dale Construction, which agreement was recorded on the land records.

In concluding that Neubig's interest was superior to that of the plaintiff, the court specifically relied on the agreement between Neubig and Alexandria Estates, recorded on the land records on November 7, 2002. The court reasoned that the parties intended that the agreement be recorded on the land records. On this ground, the court concluded that the agreement ran with the land and, thus, gave Neubig a superior interest to that of the plaintiff.

The dispositive issue is as follows: Was the agreement between Neubig and Alexandria Estates a personal covenant *or* a real covenant? If the agreement was personal, it cannot be said to have run with the land and, thus, have bound the plaintiff, a future grantee. "For purposes of the distinction between real covenants and personal covenants, a covenant may 'run with the land,' or may simply be a matter between the grantor and purchaser. If the covenant does not touch or concern the occupation or enjoyment of the land, it is the collateral and personal obligation of the grantor or lessor and does not run with the land." 21 C.J.S. 359–60, Covenants § 32 (2006). "A covenant that touches and concerns the land can be one that calls for either doing physical things to the land, or refraining from doing physical things to the land." Id., p. 359. "Whether a promise with respect to the use of land is a covenant real as distinguished from a personal covenant depends upon the intent of the parties to the promise, to be determined in the light of the attendant circumstances. *If it touches the land involved to the extent that it materially affects the value of that land, it is generally to be interpreted as a covenant which runs with the land.*" (Emphasis added.) *Carlson* v. *Libby*, 137 Conn. 362, 367, 77 A.2d 332 (1950). "A covenant in a deed which restrains the

use to which the land may be put in the future as well as in the present and which might very likely affect its value, touches and concerns the land." *Dick* v. *Sears-Roebuck & Co.*, 115 Conn. 122, 125, 160 A. 432 (1932). There is no dispute as to what agreements Neubig relied on to demonstrate the nature of his interest in the subject property. Thus, the issue is one of law and is entitled to plenary review by this court.

Here, the agreements at issue certainly are *related to the land.* The agreements contained descriptions of the subject property and included language that appeared to bind the heirs and assigns of the parties.[2] Moreover, the agreements were recorded on the land records. Yet, it cannot be said that the agreements are covenants that *touch and concern the land* and, thus, run with the land. The agreements require that payment be made to Neubig, the former owner of the subject property, when certain lots on the subject property are approved for subdivision. The agreements do not call for anything to be done to the land, do not call for anything not to be done to the land, do not materially affect the value of the land or restrain the future use of the land. Simply put, the agreements do not concern the occupation or enjoyment of the land by any party. The agreements did not run with the land, but were merely personal covenants between Neubig, on the one hand, and Dale Construction and Alexandria Estates, on the other, that were filed on the land records. The court improperly relied on the agreements to grant Neubig priority over the plaintiff, which was not bound by the agreements.

---

[2] The agreement between Neubig and Dale Construction, recorded on March 4, 2004, stated in relevant part: "The covenants and stipulations of this agreement shall apply to and bind the heirs, executors, administrators, successors and assigns of the respective parties hereto." That agreement, like the agreement between Neubig and Alexandria, recorded on November 7, 2002, included, in "Schedule A," a detailed description of the property at issue.

I would remand the case to the court with direction to grant the plaintiff priority with respect to Neubig's claimed interest in the property. On several grounds, I respectfully disagree with the majority's decision to remand the case to the trial court for the purpose of examining the deed that conveyed the subject property from Neubig to Alexandria Estates.

This is not an action to quiet title. The narrow issue is whether the agreements relied on by Neubig entitle him to priority over the plaintiff, as argued. Neubig did not rely on any language in the deed before either this court or the trial court. There is nothing in the record to suggest that the deed was in any way part of Neubig's theory of superior priority over the plaintiff. Even if we were to assume that the language in the deed was relevant to the issue before this court, I do not believe that it is proper for this court, on its own initiative, to raise that ground on Neubig's behalf. There is no claim that Neubig did not avail himself of a full and fair opportunity to present his case before the trial court and to defend his appeal before this court. Because this court is not an advocate for any party; see *Nieves* v. *Cirmo*, 67 Conn. App. 576, 587 n.4, 787 A.2d 650 ("[t]he court is not an advocate and should not be placed in a position of making tactical decisions for the attorneys before it"), cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002); I would not look beyond the grounds properly relied on by Neubig, as well as the specific claim of error brought before this court. "It is a bedrock principle of appellate jurisprudence that, *generally*, claims of error not raised before the trial court will not be considered by a reviewing court. The principle is rooted in considerations of fairness as well as judicial economy." (Emphasis in original.) *State* v. *Elson*, 125 Conn. App. 328, 340–41, 9 A.3d 731 (2010) (en banc), cert. granted on other grounds, 300 Conn. 904, 12 A.3d 572 (2011). Likewise, it is "well established that [appellate] review is

limited to claims raised by the parties in their briefs." *Payton* v. *Payton*, 103 Conn. App. 825, 841, 930 A.2d 802 *(Schaller, J.,* concurring), cert. denied, 284 Conn. 934, 935 A.2d 151 (2007); see also *Sequenzia* v. *Guerrieri Masonry, Inc.*, 298 Conn. 816, 822, 9 A.3d 322 (2010) (reviewing court lacks authority to resolve case on any basis, regardless of claims raised on appeal).

For the foregoing reasons, I concur with the majority's judgment, insofar as it reverses the judgments of the trial court. I dissent from that portion of the majority's judgment remanding the case to the trial court for further proceedings to examine the deed conveying the subject property from Neubig to Alexandria Estates.