CITIMORTGAGE, INC. *v.* WILLIAM GAUDIANO ET AL.
(AC 34632)

Gruendel, Alvord and Flynn, Js.

Argued February 4—officially released May 7, 2013

*Ridgely Whitmore Brown,* for the appellant (named defendant).

*Donald E. Frechette,* with whom, on the brief, was *Tara L. Trifon,* for the appellee (plaintiff).

*Opinion*

GRUENDEL, J. The defendant William Gaudiano appeals from the judgment of strict foreclosure rendered by the trial court following the denial of his motion to dismiss, for lack of subject matter jurisdiction, this foreclosure action brought by the plaintiff, CitiMortgage, Inc.[1] The defendant claims that the court improperly concluded that the plaintiff had standing to bring the action. We affirm the judgment of the trial court.

The procedural posture of this case governs our recitation of the facts underlying the appeal. "When a . . . court decides a . . . question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Bellman* v. *West Hartford,* 96 Conn. App. 387, 393, 900 A.2d 82 (2006). Further, in addition to admitting all facts well pleaded, the motion to dismiss "invokes

---

[1] The plaintiff also named Wells Fargo Bank, N.A., and "Stock Building Supply, Inc. f/k/a East Haven Builders Supply, Inc.," as defendants. For convenience, we refer to Guadiano as the defendant in this appeal.

any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) *Henriquez* v. *Allegre*, 68 Conn. App. 238, 242, 789 A.2d 1142 (2002).

This appeal concerns real property owned by the defendant and known as 18 Woodrow Street in Stamford (property). On March 9, 2004, the defendant executed a promissory note (note) in favor of Nation's Standard Mortgage Corp. in the principal amount of $443,900. That note was secured by a mortgage deed on the property that the defendant also executed on March 9, 2004, and delivered to Nation's Standard Mortgage Corp.

As the trial court expressly found, the plaintiff became the owner and holder of the note on July 29, 2005. When the defendant subsequently failed to make his mortgage payments, the plaintiff provided him with written notice that he was in default of his obligations under the note and mortgage. The defendant failed to cure that default, and the plaintiff commenced the present foreclosure action in the spring of 2010.

On August 18, 2010, the court entered a default against the defendant for failure to disclose a defense and rendered a judgment of foreclosure by sale, setting a sale date of January 8, 2011. On December 28, 2010, the defendant filed a motion to open the judgment, claiming that "the plaintiff does not have standing to foreclose this mortgage." By order dated January 3, 2011, the court denied that motion and sua sponte extended the sale date to April 30, 2011. The court also ordered that "[a]ny motions to reopen the judgment must be filed on or before March 29, 2011."

Later that same day, the defendant filed a motion to dismiss, in which he averred, inter alia, that the plaintiff "was not the owner of the mortgage and note when this action was initiated and, therefore, does not have

standing as a plaintiff." As a result, the defendant requested that his "motion be granted and the case dismissed for lack of subject matter jurisdiction." The plaintiff filed an objection to that motion on February 10, 2011, which repeated the allegation, originally set forth in its complaint, that it was the holder of the note prior to the commencement of the foreclosure action. The plaintiff specifically relied on General Statutes § 49-17 in arguing that it possessed the requisite standing.[2] The plaintiff also submitted the affidavit of Amy L. Meyer, its document control officer, which stated in relevant part that the plaintiff "became [the] holder of [the] note on July 29, 2005 prior to the commencement of this action." The court conducted an evidentiary hearing on the motion on February 16, 2011, which centered on purported discrepancies in the chain of title with respect to the note and mortgage deed. At the conclusion of the hearing, the court denied the defendant's motion to dismiss without prejudice. The court also vacated the judgment of foreclosure by sale for the express purpose of affording the parties the opportunity to further brief the jurisdictional issue.

The defendant filed a second motion to dismiss for lack of standing on March 4, 2011, which the plaintiff opposed. The court conducted an evidentiary hearing on August 4 and 5, 2011, at the conclusion of which it denied the motion. In so doing, the court specifically found, on the evidence before it, that the plaintiff was the owner and holder of the note on July 29, 2005.

---

[2] General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

As a result, the court concluded that the plaintiff had standing to commence the present foreclosure action. The plaintiff thereafter filed a motion for a judgment of strict foreclosure, which the court granted on April 30, 2012, and this appeal followed.

As the defendant states in his appellate brief, "[t]he issue is standing and [whether] the plaintiff [had] an assignment of the note at the commencement of this foreclosure action." It is well established that "[a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary." (Citations omitted; internal quotation marks omitted.) *Megin* v. *New Milford*, 125 Conn. App. 35, 37, 6 A.3d 1176 (2010).

Furthermore, "[t]he scope of review of a trial court's factual decisions related to the issue of standing on appeal is limited to a determination of whether they are clearly erroneous in view of the evidence and pleadings." *Marlin Broadcasting, LLC* v. *Law Office of Kent Avery, LLC*, 101 Conn. App. 638, 642, 922 A.2d 1131 (2007). "[W]hen reviewing findings of fact, we defer to the trial court's determination unless it is clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Under the clearly erroneous standard

of review, a finding of fact must stand if, on the basis of the evidence before the court and the reasonable inferences to be drawn from that evidence, a trier of fact reasonably could have found as it did." (Internal quotation marks omitted.) *Suresky* v. *Sweedler*, 140 Conn. App. 800, 806–807, 60 A.3d 358 (2013).

On appeal, the defendant claims that the court's finding that the plaintiff was the owner and holder of the note prior to the commencement of this action is clearly erroneous. Specifically, he contends that "the plaintiff does not have a valid assignment of the note in the land records," which he suggests is a prerequisite to the commencement of a foreclosure proceeding. The defendant has provided no authority—from our statutes, decisional law or otherwise—imposing such a requirement.

Rather, § 49-17 "permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him. . . . The statute codifies the common-law principle of long standing that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage. . . . Our legislature, by adopting § 49-17, has provide[d] an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him." (Citations omitted; internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 576–77, 989 A.2d 606, cert. denied, 295 Conn. 922, 991 A.2d 564 (2010).

The plaintiff availed itself of that avenue of redress in the present case, as the court specifically found that it was the holder of the note since July 29, 2005, years prior to its commencement of this action. That finding is supported by the record before us. At the evidentiary hearing, the plaintiff produced a copy of the note in

question. That evidence plainly indicates that the note first was assigned by Nation's Standard Mortgage Corp. to Lehman Brothers Bank, FSB, and then later was assigned by Lehman Brothers Bank, FSB, to Lehman Brothers Holdings, Inc. That documentary evidence further demonstrates that Lehman Brothers Holdings, Inc., endorsed the note in blank and that the plaintiff subsequently stamped its name thereon, converting the endorsement to a special endorsement pursuant to General Statutes § 42a-3-205 (c).[3] The court credited that evidence during the evidentiary hearing.

The court also credited the videotaped deposition testimony of Jonathan Kukic, an employee of Aurora Bank, FSB.[4] Kukic testified that he was personally familiar with the "MCD Viewer," which is a computer storage system that "dates all the records that are scanned into our system . . . ." Kukic further testified that a review of the records related to the defendant's property in the MCD Viewer revealed that the assignment of the note from Lehman Brothers Bank, FSB, to Lehman Brothers Holdings, Inc., was scanned into the system and "imaged on April 14, 2004." Kukic explained that such records are scanned into the records soon after

[3] General Statutes § 42a-3-205 provides in relevant part: "(a) If an endorsement is made by the holder of an instrument, whether payable to an identified person or payable to bearer, and the endorsement identifies a person to whom it makes the instrument payable, it is a 'special endorsement'. When specially endorsed, an instrument becomes payable to the identified person and may be negotiated only by the endorsement of that person. . . .

"(b) If an endorsement is made by the holder of an instrument and is not a special endorsement, it is a 'blank endorsement'. When endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed.

"(c) The holder may convert a blank endorsement that consists only of a signature into a special endorsement by writing, above the signature of the endorser, words identifying the person to whom the instrument is made payable . . . ."

[4] At the evidentiary hearing, counsel for the plaintiff represented to the court that Aurora Bank, FSB, "was formerly known as Lehman Brothers Bank, FSB."

they are received.[5] The court credited Kukic's testimony, on which it found that "as of April 14, 2004, the note was endorsed . . . from Lehman Brothers Bank, FSB, to Lehman Brothers Holdings, Inc." In addition, the court credited Meyer's affidavit. In that affidavit, Meyer states, on the basis of her personal knowledge as a document control officer and her review of the books and records of the plaintiff with respect to the defendant's property, that the plaintiff "became [the] holder of [the] note on July 29, 2005 prior to the commencement of this action." That evidence substantiates the court's finding that the plaintiff was the owner and holder of the note prior to the commencement of this foreclosure proceeding. We thus cannot say that this finding is clearly erroneous.

The defendant nevertheless argues that the finding is clearly erroneous in light of his contention that "the plaintiff does not have a valid assignment of the note in the land records." At the evidentiary hearing, the defendant submitted a certified copy of a "Corporate Assignment of Mortgage" that was filed on the Stamford land records on July 9, 2004. That document purportedly assigned the note and mortgage from Lehman Brothers Bank, FSB, to Mortgage Electronic Registration Systems, Inc. (MERS), on June 9, 2004. In light of that evidence, the defendant maintains that "[t]he land records control the issue . . . ."

The trial court considered, and rejected, that argument at the evidentiary hearing on the motion to dismiss. Specifically, the court found that because Lehman Brothers Bank, FSB, had assigned the note to Lehman Brothers Holdings, Inc., as of April 14, 2004, it could not have assigned the note to MERS months later on June 9, 2004. As the court stated during the evidentiary

---

[5] The plaintiff included a transcript of Kukic's deposition testimony in the appendix to its appellate brief.

hearing: "The court finds that [the defendant] raises an interesting issue [as to] when was the endorsement on these notes from Lehman Brothers Bank [FSB] to Lehman Brothers Holdings, Inc. If in fact the endorsements were done after the June 9, 2004 assignment . . . from Lehman Brothers Bank, FSB, to MERS, [the defendant] would be absolutely correct that the note was assigned to MERS. However, the court finds the testimony and the exhibits [submitted by the plaintiff] persuasive, the court believes . . . that . . . the note was endorsed first by Nation's Standard Mortgage Corp. to Lehman Brothers Bank, FSB, and then from Lehman Brothers Bank, FSB, to Lehman Brothers Holdings, Inc. . . .

"The only thing that Lehman Brothers Bank, FSB, could assign at that point was the mortgage. They were not owners and holders of the note at that point. So, I agree with [the defendant] that this [filing on the land records] is sloppy, that it shouldn't have been done. That is part of the problem with our whole mortgage foreclosure area of the law, but the court has to find that Lehman Brothers Bank, FSB, was not the owner and holder of the note on June 9, 2004. So, when they assigned the note at that point, they didn't own it, they didn't possess it, so they didn't assign anything to MERS except the mortgage . . . . [W]hen they assigned the note on June 9, 2004, they assigned nothing because they didn't own the note at that point, they were not holders of the note."[6] The court thus concluded that the June 9, 2004 assignment of the note to MERS had no bearing on the question of whether the plaintiff had standing to commence the foreclosure action, as it was, in essence, a nullity.

---

[6] It is undisputed that MERS assigned the mortgage deed to the plaintiff on May 20, 2010. At the evidentiary hearing, the plaintiff submitted a certified copy of that assignment as filed on the Stamford land records on May 27, 2010.

We disagree with the defendant's assertion that "[t]he land records control the issue, not some computer date stamp from . . . business records of a prior servicer of the loan." What truly controls the issue is that evidence which the trier of fact deems credible. Under the applicable standard of review, this court cannot retry the facts or pass on issues of credibility. See *Bowen* v. *Serksnas*, 121 Conn. App. 503, 507, 997 A.2d 573 (2010). In the present case, the court specifically credited the evidence submitted by the plaintiff, which included copies of the loan documents in question, the affidavit of its loan control officer and the videotaped deposition testimony of Kukic. On that evidence, the court reasonably could have found that the plaintiff was the holder and owner of note in question as of July 29, 2005, years prior to its commencement of this foreclosure action.

We therefore conclude that the court correctly determined that the plaintiff had standing pursuant to § 49-17 to pursue a foreclosure action against the defendant. Accordingly, the court properly denied the defendant's motion to dismiss.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion ALVORD, J., concurred.

FLYNN, J., concurring. The plaintiff, CitiMortgage, Inc., first invoked the jurisdiction of the Superior Court to foreclose the defendant, William Gaudiano's mortgage, when a prior owner of both note and mortgage had assigned both the mortgage note and mortgage deed to another entity, called Mortgage Electronic Registration Systems, Inc., by assignment dated June 9, 2004, and recorded July 9, 2004, in book 7635, page 167, of the Stamford land records. I will leave it to others to decide whether some banks are too big to fail. It is becoming increasingly evident, however, that some

have become unable to efficiently manage their book of loans.

I concur that affirmance is required by General Statutes § 49-17, which permits foreclosure of a mortgage by the noteholder entitled to receive the money evidenced by the mortgage note but to whom the legal title to the mortgaged premises has never been conveyed, and further permits such a noteholder to file a certificate of foreclosure on the land records after expiration of the time limited for redemption. The mischief that is possible to land titles under such scenarios is evident when one considers the land records system we have had since colonial times. Persons who convey an interest in real estate are listed by their name in a grantor index by the town clerk in each of the municipalities of our state. The party receiving that interest from the grantor is so listed in the grantee index of land records in the town or city where the land is located. Where a mortgage has never been assigned on the land records to the foreclosing party and that party merely holds the note, there is the potential for a gap in title on the land records when the noteholder files a lis pendens and/or certificate of foreclosure of the mortgage lien. Connecticut is a title state and the concept of the chain of title is well explained and expressed in the Connecticut Standards of Title: "The 'chain of title' concept is a principle of case law, developed to protect subsequent parties from being charged with constructive notice of the existence and contents of those recorded instruments which a title searcher would not be expected to discover by the customary search of land records. . . ." Connecticut Bar Association, Connecticut Standards of Title (1999), standard 2.2; see also *Ginsberg & Ginsberg, LLC* v. *Alexandria Estates, LLC*, 136 Conn. App. 511, 516, 48 A.3d 101 (2012).

While as judges we do not set legislative policy, I see some obligation to point out that no title search could

find that CitiMortgage, Inc., ever received any assignment of mortgage from the mortgage holder of record at the time CitiMortgage, Inc., commenced this foreclosure action. This raises the obvious questions of what interest remains in the mortgage holder of record and why did not the record mortgage holder, rather than CitiMortgage, Inc., commence the foreclosure. The more basic question is what continued reliance can be placed on public land records to determine title to real property due to the effect of the application of § 49-17.