******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROGER SAUNDERS, TRUSTEE
*v.* KDFBS, LLC, ET AL.
(AC 40918)

Moll, Alexander, and Suarez, Js.

*Syllabus*

The plaintiff, as trustee, sought to foreclose a mortgage on certain real property owned by the defendant L Co. In the first count of his complaint, the plaintiff sought foreclosure of the mortgage, alleging, inter alia, that there were encumbrances on the subject property that were subsequent and subordinate to his mortgage, including the mortgage of the defendants K and D. In the second count, the plaintiff sought a declaratory judgment that the mortgage of K and D, which was purportedly recorded before the plaintiff's mortgage, was subordinate to the plaintiff's mortgage on the ground that the plaintiff had no notice of K and D's mortgage because it had been incorrectly indexed by the town clerk's office. K and D denied the allegation in each count that their mortgage was subordinate to the plaintiff's mortgage and asserted a special defense that L Co. had mortgaged the subject property to them and that their mortgage was prior in right and title to the plaintiff's mortgage. Due to a mistake on the mortgage, the town clerk's office initially indexed the deed under S, the sole member of L Co., as an individual, rather than as a representative of L Co. The trial court rendered judgment for the plaintiff on both counts and ordered a foreclosure by sale. Prior to the sale date set by the court, K and D appealed from the judgment of foreclosure to this court, which dismissed the appeal for lack of a final judgment. K and D, on the granting of certification, appealed to our Supreme Court, which reversed this court's order and remanded this case to this court for further proceedings. *Held* that the trial court's finding that the plaintiff's mortgage had priority over K and D's mortgage was not clearly erroneous; K and D's mortgage did not put the plaintiff on actual or constructive notice when it was lodged with the town clerk, as, due to an error in the language of the mortgage, the chain of title for L Co. was silent as to the existence of K and D's mortgage, which was indexed with S as the grantor according to accepted practice, and there were no documents, information or other matters that appeared in the chain of title of L Co. to put the plaintiff's title searcher on any notice as to K and D's mortgage.

Argued January 12—officially released July 20, 2021

*Procedural History*

Action to foreclose a mortgage on certain of the named defendant's real property, and for other relief, brought to the Superior Court in the judicial district of Danbury and tried to the court, *Hon. William J. Lavery*, judge trial referee; judgment of foreclosure by sale and determination of the parties' mortgages as to the subject property; thereafter, the defendant Karen Davis et al. appealed to this court, which granted the plaintiff's motion to dismiss the appeal, and the defendant Karen Davis et al., on the granting of certification, appealed to the Supreme Court, which reversed this court's order dismissing the appeal and remanded the case to this court for further proceedings. *Affirmed.*

*Alexander Copp*, with whom were *Neil R. Marcus*, and, on the brief, *Barbara M. Schellenberg*, for the appellants (defendant Karen Davis et al.).

*Ryan S. Tougias*, with whom were *Michael J. Jones*

and *John J. Ribas*, and, on the brief, *Jessica M. Signor*, for the appellee (plaintiff).

*Opinion*

ALEXANDER, J. This appeal returns to us on remand from our Supreme Court. *Saunders* v. *KDFBS, LLC*, 335 Conn. 586, 239 A.3d 1162 (2020). The defendants Daniel Davis and Karen Davis[1] appealed from the judgment of foreclosure by sale rendered by the trial court in favor of the plaintiff, Roger Saunders, Trustee of Roger Saunders Money Purchase Plan. At trial, the plaintiff sought a judgment of foreclosure by sale and a declaratory judgment that the plaintiff's mortgage had priority over the defendants' mortgage. The defendants argued on appeal that the trial court erred in its determination that the mortgage held by the plaintiff (Saunders mortgage) on the underlying real property had priority over the mortgage held by the defendants (Davis mortgage) on the same property. This court summarily dismissed the appeal for lack of a final judgment. Our Supreme Court granted certification and reversed the decision of this court and remanded the appeal to this court for further proceedings. Id., 606.

On appeal, the defendants argue that the Davis mortgage has priority over the Saunders mortgage because the Davis mortgage was a valid mortgage that had been lodged with the town clerk's office first. The Davis mortgage initially was recorded outside the chain of title for the defendant KDFBS, LLC (KDFBS), due to a drafting error contained in the grantor clause of the mortgage. The town clerk's office recorded the Davis mortgage within the chain of title for KDFBS after a correction report was issued in 2009, but this occurred after the Saunders mortgage had been properly recorded. The defendants claim that, notwithstanding the fact that the Davis mortgage was submitted to the town clerk's office with a drafting error, the plaintiff nonetheless had constructive notice of the Davis mortgage when it initially was lodged with the town clerk in 2008. We disagree and, accordingly, affirm the judgment of the trial court.

In its decision, our Supreme Court set forth the following relevant facts and procedural history. "In March, 2008, [KDFBS] purchased the subject property, a condominium in Ridgefield, by way of a deed that was recorded under its name in April, 2008. KDFBS is managed by its sole member, the defendant Brian Scanlon.

"In June, 2008, KDFBS executed a mortgage deed on the property in favor of [the defendants] in the principal amount of $565,000. Although the signature line and the acknowledgement clause of the deed reflected that Scanlon was executing the deed in his capacity as a member of KDFBS, his designation as a member was erroneously omitted in the grantor clause at the top of the mortgage deed. The Ridgefield town clerk's office indexed the deed under Scanlon's personal name as the grantor.

"In October, 2009, KDFBS executed a second mortgage deed on the Ridgefield property in favor of the plaintiff as security for a joint loan in the amount of $110,000 to KDFBS and to Scanlon individually. Scanlon told the plaintiff that he would have a first mortgage on the property. To ensure his security for the loan, the plaintiff had a title search conducted. That search revealed no mortgages of record in KDFBS' chain of title. The [Saunders] mortgage deed was duly recorded in October, 2009.

"In December, 2009, the Ridgefield town clerk's office changed the official index for the Davis mortgage after an unidentified person brought the indexing error to the town clerk's attention. A correction report was issued, and the Davis mortgage was changed from the grantor index for Scanlon to the index for KDFBS.

"KDFBS and Scanlon subsequently defaulted on their obligation to the plaintiff . . . . In the first count of the complaint, the plaintiff sought foreclosure of [the Saunders] mortgage. In addition to asserting allegations regarding the default, this count alleged that there were encumbrances on the subject property that were subsequent and subordinate to the [Saunders] mortgage, among which was the purported Davis mortgage, which was recorded in 2008. In the second count, the plaintiff sought a declaratory judgment that the 2008 Davis mortgage was subordinate to the . . . 2009 [Saunders] mortgage because the plaintiff had no notice of it due to it having been indexed under Scanlon's name.

"[The defendants] filed an answer denying the allegation in each count that [the Davis] mortgage was subordinate to the [Saunders] mortgage. They also asserted a special defense that KDFBS, acting through its duly authorized member, Scanlon, had mortgaged the subject property to them and that this mortgage was prior in right and title to the [Saunders] mortgage.

"KDFBS was defaulted for failure to appear and Scanlon was defaulted for failure to plead. The plaintiff then filed a motion for a judgment of foreclosure by sale. The motion was supported by an affidavit of debt totaling $176,467.50, an affidavit of attorney's fees in the amount of $18,345, and an appraisal assessing the property's fair market value at $310,000.

"Following a contested trial between the plaintiff and [the defendants], the court rendered judgment in favor of the plaintiff on both counts and ordered a foreclosure by sale." (Footnotes omitted.) Id., 588–90. This appeal followed. Additional facts will be set forth as necessary.

The defendants seek reversal of the trial court's declaratory judgment in which it found that the Saunders mortgage had priority over the Davis mortgage. The defendants argue that the language of the mortgage deed, as recorded in 2008, put the plaintiff on constructive notice of the Davis mortgage. The plaintiff counters

that he cannot be charged with constructive notice of the Davis mortgage because it was recorded outside the chain of title for KDFBS.

We begin our analysis by setting forth our standard of review. "Our standard of review is plenary when we are required to determine the intent behind language in a deed or other written instrument by which litigants claim an interest in real estate. Under that plenary standard, we are not required to give customary deference to the trial court's factual inferences." *Ginsberg & Ginsberg, LLC* v. *Alexandria Estates, LLC*, 136 Conn. App. 511, 515, 48 A.3d 101 (2012). "To the extent that the court has made findings of fact, our review is limited to a determination of whether the court's conclusions were clearly erroneous." *Torgerson* v. *Sarah Tuxis Residential Services, Inc.*, 81 Conn. App. 435, 439, 840 A.2d 66, cert. denied, 269 Conn. 903, 852 A.2d 737 (2004). Further, "[t]o the extent that our review requires us to construe statutory provisions, this presents a legal question over which our review also is plenary." *Washington Mutual Bank* v. *Coughlin*, 168 Conn. App. 278, 288, 145 A.3d 408, cert. denied, 323 Conn. 939, 151 A.3d 387 (2016).

In the present matter, the court determined in the judgment of foreclosure that the Saunders mortgage, which was recorded in October, 2009, had priority over the Davis mortgage. The court found that the Davis mortgage had not been recorded in the chain of title for KDFBS until December, 2009. "The law relating to the priority of interests has its roots in early Connecticut jurisprudence. A fundamental principle is that a mortgage that is recorded first is entitled to priority over subsequently recorded mortgages provided that every grantee has a reasonable time to get his deed recorded." (Internal quotation marks omitted.) *Equicredit Corp. of Connecticut* v. *Kasper*, 122 Conn. App. 94, 97, 996 A.2d 1243, cert. denied, 298 Conn. 916, 4 A.3d 831 (2010). In addition, General Statutes § 47-10 (a) provides in relevant part: "No conveyance shall be effectual to hold any land against any other person but the grantor and his heirs, unless *recorded* on the records of the town in which the land lies. . . ." (Emphasis added.)

The defendants do not argue on appeal that the plaintiff had actual notice of the Davis mortgage. The plaintiff testified that he was told by Scanlon that he would have the first mortgage on the property and that he would not have engaged in business with Scanlon had he known of the other mortgage on the property.

The defendants argue that, when the plaintiff recorded his mortgage in 2009, he had constructive notice of the Davis mortgage, which had been lodged with the Ridgefield town clerk in 2008. The defendants assert that the two elements for constructive notice in a land record, namely, (1) a valid mortgage[2] under either our common law or the safe harbor provision of General

Statues § 49-31b (a),[3] which was (2) "lodged for [the] record" with the town clerk, were satisfied in this case. *Butchers' Ice & Supply Co.* v. *Bascom*, 109 Conn. 433, 441, 146 A. 843 (1929); see also *Connecticut National Bank* v. *Lorenzato*, 221 Conn. 77, 82, 602 A.2d 959 (1992). After a thorough review of the record, we conclude that the Davis mortgage did not put the plaintiff on constructive notice when it was lodged with the town clerk in 2008.

The defendants claim that, notwithstanding the drafting error naming Brian Scanlon as the grantor in the grantor clause, the language of the mortgage deed as a whole put the plaintiff on constructive notice that KDFBS was the intended grantor of the mortgage. The defendants assert that "any possible ambiguity created by the granting clause is resolved when the Davis mortgage is reviewed in its entirety" and that, therefore, the plaintiff was put on constructive notice of the Davis mortgage when that mortgage was first lodged with the Ridgefield town clerk in 2008.

The defendants rely on two separate lines of authority in support of their constructive notice claim. The first line of authority stands for the proposition that "recordation of a valid mortgage gives constructive notice to third persons if the record sufficiently discloses the real nature of the transaction so that the third party claimant, exercising common prudence and ordinary diligence, can ascertain the extent of the encumbrance." *Connecticut National Bank* v. *Lorenzato*, supra, 221 Conn. 81; see id., 82 (citing cases).

The defendants argue that *Lorenzato* controls the present case. We disagree. In *Lorenzato*, the mortgage at issue was recorded in the land records with a signature page that did not have the required signatures and acknowledgment. Id., 79. Our Supreme Court held that the recordation was effective, so as to supply constructive notice upon subsequent encumbrancers, because "an express reference to the omitted documentation in the recorded mortgage deed would have enabled a title searcher to make a requisite inquiry to discover the terms of the mortgage." Id., 83. In its analysis, the court made the distinction between "a mortgage deed that is imperfectly executed and one that is imperfectly recorded. The former is a nullity and is, therefore, incapable of giving constructive notice; the latter affords constructive notice to subsequent third party creditors *to the extent that the mortgage, as recorded, contains sufficient information to put a title searcher on inquiry.* From the point of view of the third party who relies on that which the recorded conveyance purports to encumber, it is immaterial whether an imperfect recordation is attributable to the inadvertence of the recording clerk or to the inadvertence of the mortgagee. We have, in effect, so held in *Connecticut National*

*Bank* v. *Esposito*, 210 Conn. 221, 230–31, 554 A.2d 735 (1989), in which the issue was whether a recorded mortgage deed gave constructive notice to [third-party] creditors, even though the mortgagee in recording its deed had inadvertently omitted documentation containing important information about the amount of the mortgage obligation. We concluded that the recordation was effective because an express reference to the omitted documentation in the recorded mortgage deed would have enabled a title searcher to make the requisite inquiry to discover the terms of the mortgage." (Emphasis added.) *Connecticut National Bank* v. *Lorenzato*, supra, 221 Conn. 82–83.

The defendants argue that *Lorenzato*, and similar cases, instruct that our analysis should focus "exclusively on the face of the subject deed at the time it is lodged with the recording clerk, even if a subsequent recording error caused the mortgage to be undetectable by third-party creditors." We disagree. Central to the holding in *Lorenzato* was the fact that other documents *recorded within the chain of title* would have put a title searcher on inquiry about the status of the mortgage. Our Supreme Court stated that it was "persuaded that the mortgagee's inadvertent mistake in recordation gave constructive notice to the lien creditor because *the properly executed rider* was sufficient to put a title searcher on inquiry about the status of the mortgage." (Emphasis added.) *Connecticut National Bank* v. *Lorenzato*, supra, 221 Conn. 83; see also *Connecticut National Bank* v. *Esposito*, supra, 210 Conn. 230.

In *Lorenzato*, the court also reasoned that "[m]any errors in recording . . . are so neutralized by other matters *which do appear in the record*, that no searcher after the title possibly could be misled. Obviously, such shortcomings should not affect the validity of the record as notification. Among them are . . . an error or omission cured by the appearance of the information at some other point *in the record*. . . . In the cases in which the defective recordation of a valid deed was held not to give constructive notice, in contradistinction to the circumstances here, there appears to have been nothing on the face of the recorded deed to put a title searcher on inquiry about the error or omission." (Citations omitted; emphasis added; internal quotation marks omitted.) *Connecticut National Bank* v. *Lorenzato*, supra, 221 Conn. 83–84.

The second line of authority on which the defendants rely consists of cases, dating back to 1795, standing for the proposition that a valid mortgage, once lodged with the town clerk, provides constructive notice even if the town clerk makes a mistake in the recording of the mortgage or fails to record the mortgage. See id., 82 ("[w]e have held that the imperfect recordation of a valid mortgage gives constructive notice to third persons, despite a clerk's mistake in its actual recordation,

at least if the mistake is so obvious as to have put a [third-party] claimant 'upon inquiry' to ascertain what the mortgage contains"); *Butchers' Ice & Supply Co.* v. *Bascom*, supra, 109 Conn. 441 ("if the question arose, as to the respective priorities of a grantee of a deed lodged for record but failing of record through no fault of his, and of a subsequent purchaser without notice, it seems clear to us that when an attaching creditor has done all that the law requires of him to perfect his attachment of real estate, he should not lose the benefit of his attachment because of the failure of the town clerk to record the certificate of attachment, and that by the express terms of the statute his attachment if completed as therein provided, is made when the certificate is lodged in the office of the town clerk"); *Lewis* v. *Hinman*, 56 Conn. 55, 67, 13 A. 143 (1888) ("The consequences of [a] mistake [by the town clerk] should not be visited upon the mortgagee. He did all he could do and all that the law required of him. He left his deed for record, and the record, by the statute, is to be as of that date. From that time, which necessarily antedates the actual recording, his title is secure. He cannot be prejudiced by any subsequent action without his fault."); *Booth* v. *Barnum*, 9 Conn. 286, 289 (1832) ("[I]t is settled law, that when a deed is lodged for record with the [town clerk], it is constructive notice to all the world. This principle has been so long established, and it is so essential to the preservation of all the benefits of the registering act, that it can admit of no doubt."); *Judd* v. *Woodruff*, 2 Root (Conn.) 298, 299 (Super. 1795) ("[t]he plaintiffs' deed was delivered to the town clerk and by him entered upon the 26th of June 1766, and it was the duty of the town clerk to have recorded it at length; and the plaintiffs are not to suffer for his neglect [in not recording the deed at full length until 1794]").

The defendants argue that this line of cases controls the resolution of the present case. They claim that their mortgage provided constructive notice to the plaintiff because it had been lodged in 2008 with the Ridgefield town clerk. They assert that the Davis mortgage should be given priority over the Saunders mortgage because the Ridgefield town clerk "misindexed" their otherwise valid mortgage by recording it based on Scanlon and not KDFBS in the grantor clause. We are unpersuaded by the defendants' argument.

In the present case, there were no documents, information or "other matters" that appeared in the chain of title for KDFBS to put the plaintiff's title searcher on any notice as to the Davis mortgage. The plaintiff's title searcher, Albert Testani, testified extensively as to the steps he had undertaken in performing a title examination for obligations of KDFBS secured by the underlying property. Testani testified that his search did not reveal the existence of the Davis mortgage because it had not been indexed under KDFBS. Testani testified that, at the time he conducted his title search,

he did not know that Scanlon was a member of KDFBS, and the documents that he found during the search did not mention Scanlon or the Davis mortgage. He further testified that when conducting a title search it is his standard practice to search by name and not by property address as that is too "unreliable" and "dangerous." The trial court found Testani's testimony to be credible and concluded that "the title search was done and the run of the title was done in a professional manner and that the plaintiff had no actual or constructive notice of the [Davis mortgage]." We conclude that the face of the mortgage as recorded did not put the plaintiff on constructive notice because the chain of title for KDFBS was silent as to the existence of the Davis mortgage and could provide no basis for inquiry to the plaintiff's title searcher.

Moreover, our review of the record shows that the town clerk indexed the Davis mortgage in 2008, based on the standard practice that a mortgage is indexed according to the grantor clause of the mortgage deed. Barbara Serfilippi, chief clerk for the town of Ridgefield, testified that the Davis mortgage was properly indexed. Further, Serfilippi brought a copy of a handbook that the Connecticut Town Clerks Association has created for use by town clerks' offices as a guide and reference, which was admitted into evidence. The handbook indicates that, when a mortgage deed is involved, town clerks should "not index the names of [comakers] or guarantors on a note who do not appear in the granting clause of the instrument. Index the name of the owner-mortgagor as grantor and the lender-secured party-mortgagee as grantee." Serfilippi testified that the Davis mortgage was indexed under Scanlon, and not KDFBS because only Scanlon's name appeared in the grantor clause of the mortgage deed.[4] Serfilippi testified that the Saunders mortgage was indexed under KDFBS because KDFBS was the entity listed in the grantor clause of that deed in accordance with the handbook guidelines.

Additionally, on cross-examination, the following colloquy took place:

"[The Defendants' Counsel]: In 2008, was a mistake made in indexing Scanlon versus [KDFBS]?

"[Serfilippi]: I don't know if it was a mistake, because if we follow the guidelines in the handbook, it was not a mistake, the way that we interpreted it did.

"[The Defendants' Counsel]: Yeah. . . . If . . . .

"[Serfilippi]: That . . . was the granting clause."

Our review of the record supports the court's finding that the Ridgefield town clerk's office indexed the Davis mortgage according to accepted practice and that the mortgage was not "misindexed." The present case is readily distinguishable from those cases relied on by the defendants in which the town clerk's office was the source of the error. In the present case, the source of

the error was the language of the mortgage, specifically, the omission of KDFBS in the grantor's clause, that was lodged with the town clerk's office for recording. The Ridgefield town clerk's actions were not the source of the error.

The Davis mortgage was not recorded within the chain of title for KDFBS at the time the Saunders mortgage was recorded because of an error in the language of the mortgage, and, therefore, the plaintiff was not on constructive notice of the Davis mortgage. "The concept of the chain of title is well explained and expressed in the Connecticut Standards of Title: The chain of title concept is a principle of case law, developed to protect subsequent parties from being charged with constructive notice of the existence and contents of those recorded instruments which a title searcher would not be expected to discover by the customary search of land records." (Internal quotation marks omitted.) *Ginsberg & Ginsberg, LLC* v. *Alexandria Estates, LLC*, supra, 136 Conn. App. 516. It is well established that "one searching title to land is not bound to search the records at large, but only is bound with such facts as appear in the chain of title to the particular lot in question." (Internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 108, 742 A.2d 799 (2000). In the present case, the plaintiff, through a professional title searcher, conducted a thorough examination of the land records and did not discover the Davis mortgage. "The law implies notice on the ground that it is conclusively presumed that a person will not purchase an interest in a piece of land without examining the condition of the record. Such an act would be required by common prudence." *Hunt* v. *Mansfield*, 31 Conn. 488, 490–91 (1863); see also *Beach* v. *Osborne*, 74 Conn. 405, 412, 50 A. 1019 (1902). The record supports the court's determination that the plaintiff had neither actual nor constructive notice of the Davis mortgage.

"It is the policy of our law to make every man's title to his real estate, as far as practicable, appear of record, and the land records are constructive notice to all the world of any instruments there recorded." *Butchers' Ice & Supply Co.* v. *Bascom*, supra, 109 Conn. 440. We conclude that the trial court's finding that the plaintiff did not have actual or constructive notice of the Davis mortgage on the property was not clearly erroneous and, therefore, as a matter of law, the Saunders mortgage had priority over the Davis mortgage.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] KDFBS, LLC, Brian Scanlon, The United States of America, and The Village at Ridgefield Condominium Association, Inc., were also named as defendants in the plaintiff's complaint but have not participated in the present appeal. We refer to Daniel Davis and Karen Davis as the defendants.

[2] Because the trial court made findings as to the priority of the Davis and Saunders mortgages, and the plaintiff does not contest the validity of the Davis mortgage on appeal, we limit our analysis to the issue of whether the

Davis mortgage provided constructive notice to the plaintiff when it was lodged with the town clerk.

[3] General Statutes § 49-31b (a) provides: "A mortgage deed given to secure payment of a promissory note, which furnishes information from which there can be determined the date, principal amount and maximum term of the note, shall be deemed to give sufficient notice of the nature and amount of the obligation to constitute a valid lien securing payment of all sums owed under the terms of such note." See also *Dart & Bogue Co.* v. *Slosberg*, 202 Conn. 566, 578, 522 A.2d 763 (1987) (concluding that "§ 49-31b (a) is a 'safe harbor' provision that does not preempt [common-law] standards governing the validity of mortgages against subsequent lien creditors").

[4] At trial the following colloquies took place:

"[The Plaintiff's Counsel]: Were you able to determine why it is that the Davis mortgage was recorded under the name Brian Scanlon?

"[Serfilippi]: No, it's just the way that it was indexed . . . .

"[The Plaintiff's Counsel]: Okay. And, that's . . . .

"[Serfilippi]: [T]here was no reason, that's the way that they did it.

"[The Plaintiff's Counsel]: That's because of the grantor clause?

"[Serfilippi]: Of the grantor clause."

* * *

"[The Plaintiff's Counsel]: As you sit here today, do you think that the Davis mortgage was properly indexed, um, in 2008?

"[Serfilippi]: Under Brian Scanlon?

"[The Plaintiff's Counsel]: Correct?

"[Serfilippi]: Yes."