COUNTRYWIDE HOME LOANS SERVICING, LP *v.*
DIANE CREED
(AC 33477)

DiPentima, C. J., and Keller and Bishop, Js.

Argued March 20—officially released August 20, 2013

*Kevin Creed*, for the appellant (defendant).

*Oscar L. Suarez*, for the appellee (substitute plaintiff).

*Opinion*

BISHOP, J. In this foreclosure action, the defendant, Diane Creed,[1] appeals from the judgment of strict foreclosure rendered by the trial court in favor of the substitute plaintiff, Aurora Loan Services, LLC.[2] On appeal, the defendant claims that (1) the court improperly failed to hold an evidentiary hearing to determine if it had subject matter jurisdiction after she raised the issue of the plaintiff's standing, and (2) neither the original

[1] Mortgage Electronic Registration Systems, Inc. (MERS), was cited into the action as a party defendant in the trial court. MERS did not file an appearance and was defaulted. We refer to Diane Creed as the defendant in this opinion.

[2] This action was initially commenced by the named plaintiff, Countrywide Home Loans Servicing, LP (Countrywide), as agent for Park Sienna. Aurora Loan Services, LLC, became a party to the foreclosure action by way of a motion to substitute after Countrywide transferred possession of the note to it. We refer to Aurora Loan Services, LLC, as the plaintiff in this opinion.

plaintiff nor the substitute plaintiff had standing to bring the action. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are pertinent to our consideration of the issues on appeal. On November 9, 2006, the defendant executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc. (MERS),[3] as nominee for American Brokers Conduit, which secured a debt evidenced by a $420,000 promissory note executed on the same date and made payable to American Brokers Conduit. Prior to the commencement of this action, the note, endorsed in blank, was negotiated and delivered to Countrywide. On May 21, 2007, Countrywide initiated this foreclosure action based on the defendant's alleged failure to make required payments due on the note and mortgage after February 1, 2007. In April, 2008, Countrywide transferred possession of the note to the plaintiff. The plaintiff became a party to the foreclosure action by way of a motion to substitute after MERS assigned the mort-

---

[3] As this court previously has explained, "MERS does not originate, lend, service, or invest in home mortgage loans. Instead, MERS acts as the nominal mortgagee for the loans owned by its members. The MERS system is designed to allow its members, which include originators, lenders, servicers, and investors, to assign home mortgage loans without having to record each transfer in the local land recording offices where the real estate securing the mortgage is located. . . .

"The benefit of naming MERS as the nominal mortgagee of record is that when the member transfers an interest in a mortgage loan to another MERS member, MERS privately tracks the assignment within its system but remains the mortgagee of record. According to MERS, this system saves lenders time and money, and reduces paperwork, by eliminating the need to prepare and record assignments when trading loans. . . .

"If, on the other hand, a MERS member transfers an interest in a mortgage loan to a non-MERS member, MERS no longer acts as the mortgagee of record and an assignment of the security instrument to the non-MERS member is drafted, executed, and typically recorded in the local land recording office." (Internal quotation marks omitted.) *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App. 570, 572 n.2, 989 A.2d 606 (quoting *Jackson* v. *Mortgage Electronic Registration Systems, Inc.*, 770 N.W.2d 487, 490–91 [Minn. 2009]), cert. denied, 295 Conn. 922, 991 A.2d 564 (2010).

gage to it in June, 2008.[4] The defendant did not object to the plaintiff's motion to substitute and it was granted by the court, *Agati, J.*, on July 14, 2008.

The trial court file reflects that the defendant made numerous discovery requests during the pendency of the matter and that the court was requested to address multiple objections and motions to compel with respect to the production of requested documents.[5] In April, 2010, the plaintiff filed a motion for summary judgment as to liability against the defendant. Attached to the plaintiff's motion were two affidavits: by Cheryl Marchant, a vice president of the plaintiff, and John Cook, a title searcher retained by the plaintiff. Also attached to the plaintiff's motion for summary judgment were copies of the mortgage deed, the note, and the assignment of the mortgage from MERS filed on the Southbury land records. The court, *Abrams, J.*, denied the plaintiff's motion on the ground that there was a genuine issue of material fact regarding whether the plaintiff had failed to credit payments made by the defendant.

After another series of discovery disputes and the entry of a default against the defendant for failure to respond to requests for admission, the plaintiff filed a motion for a judgment of strict foreclosure. At the hearing on the motion on May 2, 2011, the defendant questioned the plaintiff's chain of title to the note and challenged whether Countrywide held the note at the commencement of the action. In response, the plaintiff produced the original note, which had two cancelled

---

[4] The document evidencing the transfer of the mortgage from MERS to the plaintiff was titled "Corporate Assignment of Mortgage" and purported to assign "the said Mortgage together with the Note." The plaintiff concedes that MERS was only the mortgagor and did not have an interest in the note for it to assign.

[5] The first judgment of strict foreclosure was entered in this action by the court, *Agati, J.*, on September 22, 2008, and was opened.

endorsements to Countrywide and one endorsement in blank, the original mortgage executed in favor of MERS, and the assignment of the mortgage from MERS to the plaintiff. On the basis of these documents, the court, *Matasavage, J.*, determined that the plaintiff was the holder of the note and rendered a judgment of strict foreclosure. The defendant filed the present appeal, which initiated an automatic stay of the foreclosure. See Practice Book § 61-11 (a).

On July 11, 2011, the plaintiff successfully moved to terminate the appellate stay of execution. The defendant filed a motion to review the court's termination of stay order, which subsequently was denied by this court on September 1, 2011. In October, 2011, the defendant filed a postjudgment motion to dismiss the action in the trial court, claiming that the plaintiff did not have standing to bring the foreclosure action and that, therefore, the court lacked subject matter jurisdiction. In connection with her motion to dismiss, the defendant filed a request for a full evidentiary hearing. The plaintiff objected to the motion and the court, *Trombley, J.*, denied the defendant's motion. Judge Trombley determined that he would not order an evidentiary hearing on the standing issue because Judge Matasavage had examined the issue when he rendered the judgment of strict foreclosure on May 2, 2011. He further determined that the plaintiff had produced the original note at the hearing before Judge Matasavage, which was sufficient to confer standing on the plaintiff.

Thereafter, on January 10, 2012, the plaintiff filed a motion to open the judgment of foreclosure and reenter judgment after a termination of the appellate stay. By memorandum of decision dated February 7, 2012, the court, *Taylor, J.*, granted the plaintiff's motion to open and reenter judgment. Judge Taylor found that the plaintiff had established that it held the note and that the defendant had failed to rebut the evidence establishing

the plaintiff's right to maintain the action. Thereafter, on March 19, 2012, Judge Taylor rendered a judgment of strict foreclosure and set a new law day of April 10, 2012.[6] The defendant subsequently filed an amended appeal in which she claimed that the trial court had once again improperly rendered a judgment of strict foreclosure.[7] On May 24, 2012, the plaintiff filed another motion to terminate the appellate stay. Judge Taylor denied that motion on December 4, 2012, and wrote in his memorandum of decision that after the first appellate stay was terminated, several issues had arisen warranting the continuation of the appellate stay, including whether the plaintiff's showing regarding its claimed status as the holder of the note was sufficient in the absence of an evidentiary hearing. We now turn to the defendant's claims on appeal.

I

The defendant first claims that the court improperly failed to conduct an evidentiary hearing to determine

---

[6] In rendering a new judgment of foreclosure, the court, *Taylor, J.*, did not create a mootness problem with respect to the defendant's original appeal because in opening the judgment, the trial court did not reverse itself or resolve any of the issues in the original appeal in the defendant's favor. See *RAL Management, Inc.* v. *Valley View Associates*, 278 Conn. 672, 691–92, 899 A.2d 586 (2006). In that case, our Supreme Court stated that "[i]n considering the effect of the opening of a judgment on a pending appeal . . . the appropriate question is whether the change to the judgment has affected the issue on appeal. If, in opening the judgment, the trial court reverses itself and resolves the matter at issue on appeal in the appellant's favor, it is clear that the appeal is moot as there is no further practical relief that may be afforded. . . . Conversely, if the judgment is opened to address issues entirely unrelated to the appeal, the opening of the judgment has had no effect on the availability of relief." (Citations omitted.) Id.

[7] On May 30, 2012, this court granted the defendant's motion to file a supplemental brief in connection with her amended appeal challenging the decisions of Judge Taylor and Judge Trombley. The defendant failed to file a supplemental brief, and, therefore, any claims she sought to raise in connection with her amended appeal are deemed abandoned. See *Deutsche Bank National Trust Co.* v. *Bertrand*, 140 Conn. App. 646, 648 n.2, 59 A.3d 864, cert. dismissed, 309 Conn. 905, 68 A.3d 661 (2013).

whether it had subject matter jurisdiction when she raised the issue of the plaintiff's standing. Specifically, the defendant argues that she raised questions of fact regarding the dates of the various assignments of the note and the validity of the assignments and that, therefore, she was entitled to an evidentiary hearing to resolve the jurisdictional factual dispute. We are not persuaded.

As a preliminary matter, we set forth the standard of review. "Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 229, 32 A.3d 307 (2011). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover, [i]t is a fundamental rule that a court may raise and review the issue of subject matter jurisdiction at any time. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal. . . . Once the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented. . . . The court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Park National Bank* v. *3333 Main, LLC*, 127 Conn. App. 774, 778, 15 A.3d 1150 (2011).

"In determining whether a court lacks subject matter jurisdiction, the inquiry usually does not extend to the merits of the case. . . . Nevertheless, the court must

determine whether it has the power to hear the general class [of cases] to which the proceedings in question belong. . . . Because the elements of subject matter jurisdiction are dependent upon both law and fact . . . in some cases it may be necessary to examine the facts of the case to determine if it is within a general class the court has power to hear. . . . Further, [w]hen issues of fact are necessary to the determination of a court's jurisdiction, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, 125 Conn. App. 201, 204–205, 9 A.3d 379 (2010), cert. granted, 300 Conn. 936, 17 A.3d 474 (2011).

The defendant relies on various precedents from this court to support her claim that if a defendant raises an issue of the plaintiff's standing, the court must hold a full "trial-like" evidentiary hearing. For example, in *Equity One, Inc.* v. *Shivers*, supra, 125 Conn. App. 201, this court held that because the trial court did not specifically find that the plaintiff was the holder of the note at the time that it instituted the action, the trial court failed to determine the pertinent facts necessary to ascertain whether it had subject matter jurisdiction. Consequently, this court remanded the case with direction to the trial court to hold an evidentiary hearing to determine the necessary jurisdictional issue of fact concerning whether the plaintiff was the holder of the note at the time it commenced the action. Id., 206. See also *Park National Bank* v. *3333 Main, LLC*, supra, 127 Conn. App. 779–80 (when question regarding plaintiff's standing was raised on motion for summary judgment, court should have held hearing to determine whether plaintiff was owner or holder of note at time action was commenced).

We agree with the defendant that "[o]nce the question of lack of jurisdiction is raised, it must be disposed of no matter in what form it is presented." (Internal quotation marks omitted.) *Equity One, Inc.* v. *Shivers*, supra, 125 Conn. App. 204. This principle, however, only requires that the court actually "determine the pertinent facts necessary to ascertain where jurisdiction [exists]." Id., 206. Thus, although we have held that an evidentiary hearing is required to resolve a *disputed* question of fact as to when the plaintiff acquired the note, those precedents are inapposite because in the case at hand there is no dispute that the plaintiff was the holder of the note. Thus, where a jurisdictional determination is not dependent on the resolution of a meaningful factual dispute, there is no requirement that the court conduct a fact-based hearing.

In the present case, there was no factual dispute that required the court to hold an evidentiary hearing to properly determine that it had subject matter jurisdiction. Judge Matasavage had the pertinent facts before him from which he could properly determine that the plaintiff had standing. The plaintiff presented the original note, with an accompanying affidavit detailing its transfer from Countrywide. The plaintiff was entitled to a rebuttable presumption that, as the holder of the note endorsed in blank, it had standing. In *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 228–32, our Supreme Court held that, pursuant to General Statutes § 49-17,[8] the holder of a negotiable promissory

---

[8] General Statutes § 49-17 provides: "When any mortgage is foreclosed by the person entitled to receive the money secured thereby but to whom the legal title to the mortgaged premises has never been conveyed, the title to such premises shall, upon the expiration of the time limited for redemption and on failure of redemption, vest in him in the same manner and to the same extent as such title would have vested in the mortgagee if he had foreclosed, provided the person so foreclosing shall forthwith cause the decree of foreclosure to be recorded in the land records in the town in which the land lies."

note secured by a mortgage has standing to bring a foreclosure action against the maker of the note, even prior to the assignment of the mortgage to the holder. "[A] holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under [General Statutes] § 49-17. . . . The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) Id., 231–32; see also *Deutsche Bank National Trust Co.* v. *Shivers*, 136 Conn. App. 291, 297 n.4, 44 A.3d 879 (same), cert. denied, 307 Conn. 938, 56 A.3d 950 (2012).

The defendant argues, nevertheless, that she brought two disputed factual issues to the court's attention during the May 2, 2011 hearing on the plaintiff's motion for judgment of strict foreclosure before Judge Matasavage. First, she claimed that two of the endorsements on the note had been cancelled and argued that a hearing was required in order to determine the effect of the cancellations. The court concluded, however, that the documents were in order and that they demonstrated that the plaintiff was the holder of note and therefore had standing to foreclose on the mortgage. Specifically, the court responded: "They now hold the note. They're the ones—Aurora Loan Services is the one who brought the case. They're holding the note. There was an endorsement on there that was cancelled. What more do you need to know? They hold the note. The documents appear to be in order. There is an assignment here from MERS to Aurora Loan Services. The documents appear to be in order." As to the defendant's issue of fact regarding the cancelled endorsements, on the basis of our review of the record, we fail to see how an evidentiary hearing could produce additional evidence that would change the legal effect of the blank endorsement

on the note, which, as a matter of law, transformed the instrument into bearer paper, payable to any party who possessed it. See General Statutes § 42a-3-205 (b) ("[w]hen endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed").

Second, the defendant asserts that she brought up a discrepancy in the dates of the assignment of the note. She questioned whether in fact the plaintiff had been assigned the mortgage prior to the action, to which the court responded that the document "speaks for itself" and instructed the defendant's counsel to examine the document. On appeal regarding this issue, the defendant argues that she was referring to the discrepancy between the date of the purported assignment of the mortgage and the note by MERS and the date of Countrywide's transfer of the note. The document evidencing the transfer of the mortgage from MERS to the plaintiff is titled "Corporate Assignment of Mortgage" and purports to assign "the said Mortgage together with the Note." Although the plaintiff agrees that the language in the assignment of the mortgage purports to assign both the mortgage and the note, it also argues that this is meaningless in light of the undisputed fact that MERS never held the note. The plaintiff also asserts that the defendant did not actually raise this issue before Judge Matasavage prior to the rendering of a judgment of strict foreclosure. The plaintiff further argues that although the defendant did raise this specific issue before Judge Trombley and Judge Taylor, she failed to offer any evidence that called into question the plaintiff's status as holder of the note. We agree with the plaintiff that the defendant did not produce any evidence that this, arguably inaccurate, filing on the land records rebutted the presumption that the plaintiff had standing as the possessor of the note endorsed in blank. *Chase Home Finance, LLC* v. *Fequiere*, 119 Conn. App.

570, 576–77, 989 A.2d 606 (even if assignment of mortgage to trustee was not valid, trustee, as holder of negotiable instrument secured by mortgage, had statutory right to foreclose on mortgage, and trustee had standing to bring foreclosure action), cert. denied, 295 Conn. 922, 991 A.2d 564 (2010). Thus, since any discrepancy in the language of the assignment as to whether the assignment pertains to both the mortgage and note is not legally pertinent to the plaintiff's right to bring this action, there was no need for the court to conduct an evidentiary hearing on that issue.

In sum, having failed to present any evidence rebutting the presumption that Countrywide was the rightful owner of the debt at the time it commenced the action, or that the plaintiff improperly was substituted for Countrywide, the defendant is unable to demonstrate any disputed jurisdictional facts mandating or warranting an evidentiary hearing. "Due process does not mandate full evidentiary hearings on all matters, and not all situations calling for procedural safeguards call for the same kind of procedure. . . . So long as the procedure afforded adequately protects the individual interests at stake, there is no reason to impose substantially greater burdens . . . under the guise of due process." (Citation omitted; internal quotation marks omitted.) *GMAC Mortgage Corp.* v. *Glenn*, 103 Conn. App. 264, 275, 931 A.2d 290 (2007). Accordingly, the defendant's claim fails.

## II

We next address the defendant's related claim that neither Countrywide nor the plaintiff had standing to bring the action. We are not persuaded.

"It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction over the claim. . . . Standing is the legal right to set judicial machinery in motion.

One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . [T]he court has a duty to dismiss, even on its own initiative, any appeal that it lacks jurisdiction to hear. . . . Where a party is found to lack standing, the court is consequently without subject matter jurisdiction to determine the cause. . . . Our review of the question of [a] plaintiff's standing is plenary." (Internal quotation marks omitted.) *HSBC Bank, USA, N.A.* v. *Navin*, 129 Conn. App. 707, 710–11, 22 A.3d 647, cert. denied, 302 Conn. 948, 31 A.3d 384 (2011).

The defendant first argues that Countrywide did not have standing to commence the foreclosure action due to the cancelled endorsements on the note. The defendant, however, ignores the undisputed fact that the note had three endorsements: the two cancelled endorsements to Countrywide and one blank endorsement. As stated previously, the subject promissory note was endorsed in blank by American Brokers Conduit, and, therefore, is payable to the bearer. "The plaintiff's standing to enforce the promissory note is set forth by the provisions of the Uniform Commercial Code as adopted in General Statutes § 42a-1-101 et seq. Under these statutes, only a 'holder' of an instrument or someone who has the rights of a holder is entitled to enforce the instrument. General Statutes § 42a-3-301. The 'holder' is the person or entity in possession of the instrument if the instrument is payable to bearer. General Statutes § 42a-1-201 (b) (21) (A). When an instrument is endorsed in blank, it 'becomes payable to bearer and may be negotiated by transfer of possession alone . . . .' General Statutes § 42a-3-205 (b)." *Chase Home Finance, LLC* v. *Fequiere*, supra, 119 Conn. App. 577. Countrywide, by way of its possession of an instrument

payable to bearer, was a valid holder of the instrument and, therefore, was entitled to enforce it. See id. Accordingly, Countrywide had standing to commence the foreclosure action.

We turn now to the defendant's claim that the plaintiff also lacked standing. The defendant first repeats her argument as to the cancelled endorsements on the note because the plaintiff obtained the note from Countrywide. Again, it is undisputed that when the plaintiff was substituted into the action, it had possession of the note endorsed in blank. When the plaintiff was substituted into the action, it assumed the position of Countrywide. "The manner in which to bring a title taken by an assignment pending suit to the attention of the court is by and in an application for a change of parties. . . . No new cause of action, in such case, has arisen; there has been simply a transfer of the right of action for the original cause. . . . The substitution was effected when the order that it be made was passed. Nothing further was required to put the new plaintiff in the shoes of the former plaintiffs." (Internal quotation marks omitted.) *F.P., Inc.* v. *Collegium & Wethersfield Ltd. Partnership*, 33 Conn. App. 826, 831, 639 A.2d 527, cert. denied, 229 Conn. 917, 642 A.2d 1211 (1994).

The defendant also argues that the plaintiff lacked standing at the time of judgment because MERS, the original mortgagee as nominee for American Brokers Conduit, did not have title to the note, and, therefore, its purported assignment of the mortgage *and the note* to the plaintiff was ineffective. As discussed previously, the plaintiff agrees that the language in the "Corporate Assignment of the Mortgage" that purports to assign both the mortgage and the note is meaningless in light of the fact that MERS never obtained an interest in the note. The plaintiff also argues that regardless of whether the assignment of the note from MERS was effective, it had obtained possession of the note from

Countrywide and, therefore, was a valid holder of the instrument and was entitled to enforce it. For example, in *CitiMortgage, Inc.* v. *Gaudiano*, 142 Conn. App. 440, 68 A.3d 101 (2013), this court held that the evidence supported the trial court's determination that the holder had standing to bring a foreclosure action, notwithstanding a similar discrepancy in land records as here, where MERS recorded an assignment of the mortgage and note, despite the undisputed fact that MERS never held the note. Section 49-17 "permits the holder of a negotiable instrument that is secured by a mortgage to foreclose on the mortgage even when the mortgage has not yet been assigned to him. . . . The statute codifies the common-law principle of long standing *that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage.* . . . Our legislature, by adopting § 49-17, has provide[d] an avenue for the holder of the note to foreclose on the property when the mortgage has not been assigned to him." (Emphasis added; internal quotation marks omitted.) Id., 445. In the present case, the defendant failed to produce any evidence to rebut the presumption that the plaintiff was the holder of the note. *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 234 ("[i]t is for the maker of the note to rebut the presumption that a holder of the note is also the owner of it"). We therefore conclude that the court correctly determined that the plaintiff had standing.

The judgment is affirmed and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.