******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JPMORGAN CHASE BANK, NATIONAL ASSOCIATION
*v.* CHRISTOS SIMOULIDIS ET AL.
(AC 36681)

Lavine, Mullins and Borden, Js.

*Argued March 16—officially released November 10, 2015*

(Appeal from Superior Court, judicial district of Stamford-Norwalk, Hon. Kevin Tierney, judge trial referee.)

*Peter V. Lathouris*, with whom, on the brief, was *Richard M. Breen*, for the appellant (named defendant).

*Laura Pascale Zaino*, with whom, on the brief, was *Brian D. Rich*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. "As the securitization of mortgage loans has become increasingly favored by financial lenders, and as arrangements for the administration of these loans have become increasingly complex, the relationship between the debtors/mortgagors and the owners of these debts has become more attenuated. Consequently, in foreclosure actions across the country on loans subject to these arrangements, challenges to the standing of parties other than the lender to bring such actions have been on the rise." *J.E. Robert Co.* v. *Signature Properties, LLC*, 309 Conn. 307, 310, 71 A.3d 492 (2013).

The present case is one of a number of foreclosure actions in which the loan originated with the now failed Washington Mutual Bank, FA (bank).[1] As in many foreclosure actions, the borrowers in the present case sought to avoid foreclosure by filing a motion to dismiss, claiming that the court lacked subject matter jurisdiction. The trial court, *Hon. Kevin Tierney*, judge trial referee, denied the motion to dismiss. Thereafter, the court, *Mintz, J.*, rendered a judgment of strict foreclosure in favor of the plaintiff, JPMorgan Chase Bank, National Association. The defendant Christos Simoulidis[2] appealed claiming that Judge Tierney improperly denied the motion to dismiss because (1) the plaintiff lacked standing and (2) the promissory note and mortgage deed are nullities under our contract law. We affirm the judgment of strict foreclosure.

We begin by setting forth the standard of review governing motions to dismiss. "Our standard of review of a trial court's findings of fact and conclusions of law in connection with a motion to dismiss is well settled. A finding of fact will not be disturbed unless it is clearly erroneous. . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts . . . . Thus, our review of the trial court's ultimate legal conclusion and resulting [denial] of the motion to dismiss will be de novo. . . .

"A motion to dismiss admits all facts well pleaded and invokes any record that accompanies the motion, including supporting affidavits that contain undisputed facts." (Internal quotation marks omitted.) *Henriquez* v. *Allegre*, 68 Conn. App. 238, 242, 789 A.2d 1142 (2002).

The following procedural history and factual findings, as found by Judge Tierney, are relevant to our resolution of the claims on appeal. On February 22, 2007, the defendant obtained a $415,000 loan from the bank and signed a $415,000 promissory note (note) to the bank secured by a first mortgage on real property at 50 Winfield Street, Norwalk. The defendant and Despina Simoulidis executed the mortgage deed.

The plaintiff commenced the present foreclosure

action in February, 2010. Paragraph 5 of the complaint alleges in part: "Said Note is in default and the Plaintiff . . . as the holder of said Mortgage and Note has elected to accelerate the balance due on said Note, to declare said Note to be due in full and to foreclose the Mortgage securing said note." The defendant did not file an answer, special defense, counterclaim or set off. The parties engaged in a substantial period of mediation but failed to resolve the matter.

On July 10, 2013, approximately three and one-half years after the action had been commenced, the defendant filed a motion to dismiss, alleging that the court lacked subject matter jurisdiction due to the plaintiff's lack of standing. The defendant stated three reasons why he believed the plaintiff lacked standing: "It is not the owner of the debt evidenced by the promissory note set forth in the complaint . . . . The promissory note relied upon by [p]laintiff is not a negotiable instrument and therefore could not be negotiated to the [p]laintiff nor could [p]laintiff attain the status of 'holder'. . . . The promissory note and mortgage deed relied upon by [p]laintiff are nullities, in that they are made payable, legally speaking, to a nonentity, which consequently lacked legal capacity to enter into them or to enforce them in our courts."

The plaintiff objected to the defendant's claims, arguing that it had standing in that the bank was the original lender; the bank failed; the Federal Deposit Insurance Corporation (FDIC) was appointed receiver; on September 25, 2008, the plaintiff acquired the assets of the bank from the FDIC pursuant to a purchase and assumption agreement; a copy of the note bears *a blank endorsement* executed by Cynthia Riley, bank vice president;[3] and the plaintiff has possession of the note and had possession of it prior to commencing the action in February, 2010. The plaintiff alleged its status as a holder, relying on *RMS Residential Properties, LLC* v. *Miller*, 303 Conn. 224, 228–29, 32 A.3d 307 (2011), overruled in part by *J.E. Robert Co.* v. *Signature Properties, LLC*, supra, 309 Conn. 325 n.18, and the presumption that the holder of a note is the owner of the debt. The plaintiff also argued that the documents that the defendant submitted in support of his motion to dismiss were insufficient to rebut the presumption that it was the owner of the debt.

After reviewing the complaint, the parties' memoranda of law, and relevant documents,[4] the court made extensive and detailed findings concerning the bank's many changes in name, charter, mergers, corporate relocations, and dealings with the Office of Thrift Supervision, the predecessor to the United States Comptroller of the Currency.[5]

The court found that on September 25, 2008, the bank was closed by the Office of Thrift Supervision and the FDIC was appointed receiver of the bank. The FDIC

declared the bank a failed bank. On that same day, the FDIC, as the receiver, and the plaintiff, as the assuming bank, executed a purchase and assumption agreement, which states in part that the FDIC conveyed to the plaintiff all right, title and interest of the FDIC in the assets of the bank. The court also found that on July 20, 2009, the FDIC, as receiver for the bank, filed a petition in the Land Court of the state of Hawaii for an order to change the home office of the bank and appoint the FDIC as receiver of the bank. The petition was accepted by the Land Court, which issued an order stating in part that documents executed by the FDIC as receiver of the bank were accepted for filing in the Land Court, including documents "filed or recorded in the Office of the Assistant Registrar of the Land Court *under the name of Washington Mutual Bank or Washington Mutual Bank, F.A.*" (Emphasis added.)

After making the foregoing factual findings, the trial court considered the three reasons the defendant claimed the plaintiff lacked standing to foreclose the mortgage: (1) the plaintiff is not the owner of the debt, (2) the subject note is not a negotiable instrument, and (3) the note and mortgage are nullities. The defendant grounded his claim that the plaintiff is not the owner of the debt on the deposition testimony of Wilkin Rodriguez, a home lending research officer in the plaintiff's employ. Rodriguez testified that the plaintiff was the holder of the note, servicer, and mortgagee, and that Freddie Mac was the investor of the debt. The defendant claimed that that testimony constituted an admission on the part of the plaintiff that it did not own the debt.

In response to the motion to dismiss, the plaintiff presented the court with the original note endorsed in blank, mortgage, and the purchase and assumption agreement dated September 25, 2008, by which the FDIC, as receiver of the bank, conveyed loans to the plaintiff.

In ruling on the motion to dismiss, the court stated that "Connecticut law holds that the submission of the original note and mortgage deed to this foreclosing trial court with an undated blank endorsement by the lender is sufficient to establish standing to the foreclosing party. *Countrywide Home Loans Servicing, LP* v. *Creed*, 145 Conn. App. 38, 42–43, 47, [75 A.3d 38, cert. denied, 310 Conn. 936, 79 A.3d 889] (2013)." It found that no court has found Rodriguez' testimony credible and binding on the court that the plaintiff is not the holder of the note. Rodriguez did not define what an investor is, he did not testify that the plaintiff is not the owner of the debt; he testified that the plaintiff was the holder of the note. The court concluded that, as holder of the note, the plaintiff had standing to foreclose the mortgage and, moreover, that it was in possession of the note prior to commencing the action. The court concluded that the defendant had failed to rebut the

holder presumption articulated in *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 234–35, that the holder of the note is the owner of the debt.

With respect to its second reason why the motion to dismiss should be granted, the defendant claimed that the note was not a negotiable instrument pursuant to General Statutes § 42a-1-201 (b) (27), which defines person, and General Statutes § 42a-1-201 (b) (21), which defines holder. The defendant argued that the lender, Washington Mutual Bank, FA, on February 22, 2007, was only a trade name and therefore was neither a person nor a holder. After analyzing several sections of the Uniform Commercial Code (UCC), General Statutes § 42a-1-101 et seq., and finding no case law holding that a trade name is not a person or that the UCC has declared that a trade name is not a person under § 42a-1-201 (b) (27), the court concluded that the defendant had failed to rebut the presumption that the note is a negotiable instrument and that the plaintiff as holder of the note has standing.

As to the third reason the defendant asserted to dismiss the action, he contended that the note and mortgage are nullities, legally speaking, as they were made payable to a nonentity. The court found this reason to be the heart of the defendant's motion to dismiss. The essence of the defendant's claim is that the bank, Washington Mutual Bank, FA, as lender, did not exist because on April 4, 2005, it was eliminated by corporate name change to Washington Mutual Bank. More specifically, the defendant argued that (1) there was no entity known as Washington Mutual Bank, FA, on February 22, 2007, (2) the use of a trade name in violation of General Statutes § 35-1 voids the mortgage transaction, and (3) a trade name is not a legal entity and cannot commence litigation.

The court found that pursuant to the bank's April 4, 2005 bylaws, and with the approval of the Office of Thrift Supervision, the bank had the right to do business under the name of Washington Mutual Bank or Washington Mutual Bank, FA. The court found that the bank's name was "Washington Mutual Bank also known as Washington Mutual Bank, FA," at all times after April 4, 2005, and that both names are existing legal entities. The court also found that no trade name is in use in the present litigation as the bank did not commence the present litigation and is not a party to it. The present foreclosure action was commenced by the plaintiff, and the defendant failed to produce any evidence that JPMorgan Chase Bank, National Association, is a trade name. For the foregoing reasons, the court denied the defendant's motion to dismiss.

After Judge Mintz rendered a judgment of strict foreclosure on behalf of the plaintiff,[6] the defendant appealed. Additional facts will be set forth as needed.

The defendant claims that the trial court improperly denied his motion to dismiss because the court's finding that he failed to rebut the presumption that the plaintiff, as the holder of the note, is the owner of the debt is clearly erroneous. We disagree.

"The issue of standing implicates [the] court's subject matter jurisdiction. . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he [or she] has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy. . . . When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Citations omitted; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 567–68, 775 A.2d 284 (2001). "Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing." *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742, cert. denied, 546 U.S. 1016, 126 S. Ct. 659, 163 L. Ed. 2d 526 (2005).

"Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, [the standard of] review is plenary." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214, 982 A.2d 1053 (2009). "Standing is established by showing that the party claiming it is authorized by statute to bring suit or is classically aggrieved." (Internal quotation marks omitted.) *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 809, 12 A.3d 852 (2011). "Statutory aggrievement exists by legislative fiat, not by judicial analysis of the particular facts of the case. In other words, in cases of statutory aggrievement, particular legislation grants standing to those who claim injury to an interest protected by that legislation." (Internal quotation marks omitted.) *Andross* v. *West Hartford*, 285 Conn. 309, 322, 939 A.2d 1146 (2008).

Very recently this court summarized the jurisprudence with respect to standing in foreclosure matters in *U.S. Bank, National Assn.* v. *Schaeffer*, 160 Conn. App. 138,    A.3d    (2015). In Connecticut, one may enforce a note pursuant to the UCC. Id., 146. General Statutes § 42a-3-301 provides in relevant part that a "[p]erson entitled to enforce an instrument means . . . the holder of the instrument . . . ."[7] (Internal quotation marks omitted.) When a note is endorsed in blank, the note is payable to the "bearer" of the note. See General Statutes § 42a-3-205 (b); see also *RMS Residential Properties, LLC* v. *Miller*, supra, 303 Conn. 231. A person in possession of a note endorsed in blank, is the valid holder of the note. See General Statutes § 42a-1-201 (b)

(21) (A). Therefore, a party in possession of a note, endorsed in blank and thereby made payable to its bearer, is the valid holder of the note, and is entitled to enforce the note. See *RMS Residential Properties, LLC* v. *Miller,* supra, 231.

In *RMS Residential Properties, LLC* v. *Miller,* supra, 303 Conn. 231, our Supreme Court stated that to enforce a note through foreclosure, a holder must demonstrate that it is the owner of the underlying debt.[8] The holder of a note, however, is *presumed* to be the rightful owner of the underlying debt, and unless the party defending against the foreclosure action rebuts that presumption, the holder has standing to foreclose the mortgage.[9] Id., 231–32. A holder only has to produce the note to establish that presumption. "The production of the note establishes his case *prima facie* against the [defendant] and he may rest there. . . . It [is] for the defendant to set up and prove the facts [that] limit or change the plaintiff's rights." (Emphasis added; internal quotation marks omitted.) Id., 232; see also *American Home Mortgage Servicing, Inc.* v. *Reilly,* 157 Conn. App. 127, 133,    A.3d    (2015).

In *J.E. Robert Co.* v. *Signature Properties, LLC,* supra, 309 Conn. 323–25, our Supreme Court articulated its analysis of standing stated in *RMS Residential Properties, LLC.* First, the court clarified that when it stated in *RMS Residential Properties, LLC,* that a holder is the rightful owner of the debt, it intended to "address the situation in which ownership of the note and ownership of the mortgage rest in different hands at the time the foreclosure action commenced." Id., 323. *J.E. Robert Co.* emphasized that the purpose of *RMS Residential Properties, LLC,* was not to restrict those cases in which ownership of the note and ownership of the debt was in the same hands. Id., 324–25. Instead, our Supreme Court put forth a means by which "a debtor may be able to produce evidence demonstrating that the [foreclosing party], who might otherwise appear to be entitled to enforce the debt [by way of possessing the note,] nevertheless lacks standing, *perhaps because ownership of the debt has passed to another party.*" (Emphasis added.) Id., 325.

*J.E. Robert Co.* further clarified that, even if a defendant in a foreclosure action were able to demonstrate that the debt was owned by a party other than the one bringing the foreclosure action, or by other means was able to rebut the presumption that the holder of the note was the owner of the debt, the result was not an automatic dismissal of the action due to lack of standing. Rather, the burden shifts back to the party bringing the foreclosure action to demonstrate that the rightful owner had in some way vested in it the right to collect the debt on the owner's behalf. Id., 325 n.18.[10]

*U.S. Bank, National Assn.* v. *Schaeffer,* supra, 160 Conn. App. 146–47, also summarized the law more suc-

cinctly: The holder of a note seeking to enforce the note through foreclosure must produce the note. The note must be endorsed so as to demonstrate that the foreclosing party is a holder, either by a specific endorsement to that party or by means of a blank endorsement to bearer. Id., 150. If the foreclosing party produces a note demonstrating that it is a valid holder of the note, the court is to presume that the foreclosing party is the rightful owner of the debt. Id. The defending party may rebut the presumption that the holder is the rightful owner of the debt, but bears the burden to prove that the holder of the note is not the owner of the debt. Id. This may be done, for example, by demonstrating that ownership of the debt had passed to another party. Id. The defending party does not carry its burden by merely identifying some documentary lacuna in the chain of title that *might* give rise to the possibility that a party other than the foreclosing party owns the debt. Id. To rebut the presumption that the holder of a note endorsed specifically or to bearer is the rightful owner of the debt, the defending party must prove that another party is the owner of the note and debt. Id. Without such proof, the foreclosing party may rest its standing to foreclose the mortgage on its status as the holder of the note.

In the present case, the plaintiff presented the court with the original note and mortgage deed both dated February 22, 2007. Page 5 of the note is an undated endorsement in blank. See footnote 3 of this opinion. In addition to the note that is endorsed in blank, the plaintiff presented the court with the purchase and assumption agreement. Section 3.1 of that agreement states in relevant part: "the [plaintiff] hereby purchases from the [FDIC] and the [FDIC] herby sells, assigns, transfers conveys, and delivers to the [plaintiff,] all right, title, and interest of the [FDIC] in and to all of the assets (real, personal and mixed, wherever located and however acquired) including all subsidiaries, joint ventures, partnerships, and any and all other business combinations or arrangements, whether active, inactive, dissolved or terminated, of the Failed Bank whether or not reflected on the books of the Failed Bank as of Bank Closing." Also in evidence for the court's consideration were the listing of the subsidiaries of Washington Mutual, Inc., and an inventory spreadsheet of Freddie Mac loans.

On appeal, the defendant claims that he successfully rebutted the presumption that the plaintiff is the owner of the subject debt on the basis of Rodriguez' deposition testimony.[11] The court found, and we agree, that Rodriguez' testimony did not rebut the presumption that the plaintiff is the owner of the debt. The court further found, and we agree, that the purchase and assumption agreement dated September 25, 2008, conveyed from the FDIC for the bank all loans to the plaintiff.

"[A] holder of a note is presumed to be the owner of the debt, and unless the presumption is rebutted, may foreclose the mortgage under . . . § 49-17. . . . The production of the note establishes his case prima facie against the makers and he may rest there. . . . It [is] for the defendant to set up and prove the facts which limit or change the plaintiff's rights." (Internal quotation marks omitted.) *Countrywide Home Loans Servicing, LP* v. *Creed*, 145 Conn. App. 38, 48, 75 A.3d 38, cert. denied, 310 Conn. 936, 79 A.3d 889 (2013). On the basis of the evidence presented to it, the court found, and we agree, that the defendant had failed to rebut the presumption that the plaintiff, as the holder of the note, was the owner and had standing to bring the action.[12]

## II

The defendant also raises several claims predicated on his belief that Washington Mutual Bank, FA, is a trade name. Specifically, the defendant claims that a trade name (1) is not a person capable of negotiating a negotiable instrument payable to bearer, (2) lacks the legal capacity to enter into a contract consisting of the note and mortgage deed, and (3) lacks standing to bring a civil action to enforce the note. We disagree.

Our review of the record and the court's memorandum of decision reveals that the court found on the basis of the bank's corporate filings and bylaws, that Washington Mutual Bank, FA, is not a trade name. Significantly, the court found that on April 4, 2005, "the bank's Federal State Charter (No. 4539) as amended and 'Washington Mutual Bank, FA,' changed its corporate name to 'Washington Mutual Bank.' " Section 1 of the bylaws states: "Corporate Title and Name. The full corporate title of the savings bank is Washington Mutual Bank. The savings bank also may do business under the name of Washington Mutual Bank, FA." The court also found that the Office of Thrift Supervisors approved the change of the bank's corporate name and the bank's right to do business under its new name, Washington Mutual Bank, or its former name Washington Mutual Bank, FA.

We thoroughly have reviewed the court's memorandum of decision and the undisputed evidence regarding the bank's history and corporate name changes. See footnote 5 of this opinion. We agree with the court's conclusion that Washington Mutual Bank, FA, is not a trade name. For that reason, we decline to address the defendant's several claims asserted on the mistaken ground that Washington Mutual Bank, FA, is a trade name.

The judgment is affirmed, and the case is remanded for the purpose of setting new law days.

In this opinion the other judges concurred.

[1] See, e.g., *JPMorgan Chase Bank*, *N.A.* v. *Eldon*, 144 Conn. App. 260,

263, 73 A.3d 757, cert. denied, 310 Conn. 935, 79 A.3d 889 (2013); *Washington Mutual Bank, F.A.* v. *Walpuck*, 134 Conn. App. 446, 43 A.3d 174, cert. denied, 305 Conn. 902, 43 A.3d 663 (2012).

[2] Despina Simoulidis, Wachovia Bank, National Association, and State of Connecticut, Department of Revenue Services are also defendants, but they have not participated in this appeal. In this opinion, we refer to Christos Simoulides as the defendant.

[3] The blank endorsement is undated and states: "Pay to the order of ____ Without Recourse. WASHINGTON MUTUAL BANK, FA By CYNTHIA RILEY, VICE PRESIDENT"

[4] The parties opted to have the court decide the motion to dismiss on the basis of the allegations in the complaint and undisputed facts. Judge Tierney noted: "[I]f the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss . . . other types of undisputed evidence . . . and/or public records of which judicial notice may be taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint." (Internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 422–23 n.17, 35 A.3d 188 (2012).

The parties submitted the following documents to the court: a five page promissory note from the defendant to the bank; a sixteen page open end mortgage securing the note on 50 Winfield Street in Norwalk; a one page Federal Home Loan Mortgage Corporation (Freddie Mac) regulation § 66.20; a one page Freddie Mac regulation § 66.17; a September 25, 2008 purchase and assumption agreement between the FDIC as receiver of the bank and the plaintiff; a one page spreadsheet of inventory of Freddie Mac loans; a one page document line report spreadsheet; a one page Securities and Exchange Commission website printout listing the subsidiaries of the bank; a forty-two page transcript of Wilkin Rodriguez' deposition; seven pages of correspondence from the Office of the Comptroller of the Currency to the plaintiff's attorney dated May 24, 2012; and twenty-five pages of certified documents from the state of Hawaii, Office of Assistant Registrar, dated August 20, 2009.

[5] The court found that the bank was founded in 1889 as Washington Mutual Savings Bank and was organized under the laws of the state of Washington to transact business as a state savings bank. On November 30, 1994, the bank was renamed Washington Mutual Bank. On December 20, 2004, Washington Mutual Bank was converted from a state chartered savings bank in the state of Washington to a federally chartered savings bank under the corporate title of Washington Mutual Bank.

Moreover, "[o]n June 28, 2005, Washington Mutual Bank referring to itself as the 'Association' by William L. Lynch, its secretary, notified the Office of Thrift Supervision . . . by letter that the proposed amendment to Section 2 of the Association's Federal Stock Charter (No. 4539) would state: 'Section 2. Office. The home office shall be located in Henderson, Nevada.' Article 1, Section 2 of the Association's bylaws would also be amended to state: 'Section 2. Home Office. The home of the savings bank shall be at Henderson, the County of Clark, in the state of Nevada.' Those amendments were noted in that June 28, 2005 letter to become effective as of September 23, 2005. These two amendments were approved by the Association (bank). The amendment to the Federal Stock Charter (No. 4539) and the amendment to the bylaws were date stamped as being received by the [Office of Thrift Supervision] on July 22, 2005, confirming the same information."

[6] On March 10, 2014, Judge Mintz found the debt to be $558,768.06, plus attorney's fees and costs.

[7] General Statutes § 42a-3-301 provides: " 'Person entitled to enforce' an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to section 42a-3-309 or 42a-3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument."

[8] In *U.S. Bank, National Assn.* v. *Schaeffer*, supra, 160 Conn. App. 147 n.5, Justice Borden stated: "Although in many, if not most, cases, the party seeking enforcement of the note will also be the owner of the debt, our jurisprudence has not specifically defined what that distinction means. We construe ownership of the underlying debt to refer to the person or entity to whom money is ultimately payable. For example, a mere servicer of the note may seek enforcement of it, although ultimately the money would be

payable to some other entity. See, e.g., *J.E. Robert Co.* v. *Signature Properties*, *LLC*, [supra, 309 Conn. 313] (J.E. Robert Company was servicer of note, but debt was owned by JP Morgan Chase Bank, N.A., to whom money was ultimately payable).”

[9] General Statutes § 49-17 “codifies the well established common-law principle that the mortgage follows the note, pursuant to which only the rightful owner of the note has the right to enforce the mortgage. . . . Our legislature, by adopting § 49-17, created a statutory right for the rightful owner of a note to foreclose on real property regardless of whether the mortgage has been assigned to him.” (Citations omitted.) *RMS Residential Properties*, *LLC* v. *Miller*, supra, 303 Conn. 230.

[10] In footnote 18 of *J.E. Robert Co.*, our Supreme Court laid out an alternative test for cases where the party commencing a foreclosure action was not the holder of the note. *J.E. Robert Co.* v. *Signature Properties*, *LLC*, supra, 309 Conn. 325 n.18. In cases where a nonholder transferee seeks to enforce a note in a foreclosure proceeding, the transferee must demonstrate by means of proper supporting documents, its right to foreclose. Id. The transferee must account for possession of the note by proving the transaction through which it acquired the note from the holder. Id., 326 n.18.

[11] Although the defendant does not say so specifically, he implies that Rodriguez’ testimony constitutes a judicial admission on the part of the plaintiff. The trial court properly determined that Rodriguez’ testimony was not conclusive of the issue of whether the plaintiff is a holder entitled to bring the present action. See *O & G Industries*, *Inc.* v. *All Phase Enterprises*, *Inc.*, 112 Conn. App. 511, 523 n.5, 963 A.2d 676 (2009) (distinguishing between judicial and evidentiary admission).

[12] The defendant does not claim that the plaintiff was not in possession of the note at the time it commenced the present action.